# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BILL EKOLA, on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| PLANET HOME LENDING, LLC, | |
| Defendant. | |

Plaintiff, Bill Ekola ("Plaintiff"), on behalf of himself and all others similarly situated, states as follows for his class action complaint against Defendant, Planet Home Lending, LLC, ("Planet Home" or "Defendant"):

## INTRODUCTION

1.      On November 15, 2023, Planet Home, a mortgage company boasting over "211,000 customers" through its offering of "excellent services", discovered it had lost control over its computer network and the highly sensitive personal information stored on the computer network in a data breach perpetrated by cybercriminals ("Data Breach").

2.      On information and belief, the Data Breach began on or around November 15, 2023. Following an internal investigation, Defendant learned cybercriminals had gained unauthorized access to its current and former clients' personally identifiable information ("PII"), including but not limited to name, address, Social Security number, loan number, and financial account number.

3.      On or about January 24, 2024–over two months after the Data Breach occurred– Planet Home finally began notifying Class Members about the Data Breach ("Breach Notice"). A

sample of the Breach Notice is attached as Exhibit A.

4.      Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering them easy targets for cybercriminals.

5.      Defendant's Breach Notice obfuscated the nature of the breach and the threat it posed—refusing to tell its client's how many people were impacted, how the breach happened, or why it took the Defendant more than 60 days to finally begin notifying victims that cybercriminals had gained access to their highly private information.

6.      Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

7.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

8.      In failing to adequately protect its client's information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed at least 199,873 of its current and former clients.

9.      Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10.     Plaintiff is a Planet Home client and Data Breach victim.

11.     The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

12.     Plaintiff, Bill Ekola, is a natural person and citizen of Arizona, where he intends to remain.

13.     Defendant, Planet Home, is incorporated in Delaware, with its principal place of business at 321 Research Parkway Suite 303, Meriden, Connecticut, 06450.

## JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed class; Plaintiff and Defendant are citizens of different states.

15.     Planet Home is a limited liability company incorporated in Delaware and maintains its principal place of business in 321 Research Parkway Suite 303, Meriden, Connecticut, 06450. Planet Home is thus a Delaware and Connecticut citizen.

16.     This Court has personal jurisdiction over Planet Home because it is a citizen in this District and maintains its headquarters and principal place of business in this District.

17.     Venue is proper because Planet Home maintains its headquarters and principal place of business in this District.

## FACTUAL ALLEGATIONS

### *Planet Home*

18.     Planet Home touts itself as a mortgage company to be "211,000 strong and

growing" and claims to provide "excellent service and a dedication to your needs."[1] It boasts over $490 million in annual revenue.[2]

19.     On information and belief, Planet Home accumulates highly private PII of its clients.

20.     In collecting and maintaining its clients' PII, Defendant agreed it would safeguard the data in accordance with its internal policies as well as state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

21.     As an alleged leader in the mortgage service industry, Planet Home understood the need to protect its current and former clients' PII and prioritize its data security.

22.     Despite recognizing its duty to do so, on information and belief, Planet Home has not implemented reasonably cybersecurity safeguards or policies to protect clients' PII or trained its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Planet Home leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to clients' PII.

***Planet Home Fails to Safeguard Clients' PII***

23.     Plaintiff is a current client of Planet Home.

24.     As a condition of receiving mortgage services from Planet Home, Plaintiff provided Defendant with his PII, including but not limited to his name, Social Security number, and banking information. Defendant used that PII to facilitate its mortgage services and required Plaintiff to provide that PII to obtain its mortgage services.

25.     On information and belief, Planet Home collects and maintains clients'

---

[1] Planet Home Lending, https://planethomelending.com/ (last visited January 31, 2024).
[2] Planet Home Lending, Zippia, https://www.zippia.com/planet-home-lending-careers-1569612/revenue/ (last visited January 31, 2024).

unencrypted PII in its computer systems.

26.     In collecting and maintaining PII, Defendant implicitly agreed that it will safeguard the data using reasonable means according to their internal policies as well as state and federal law.

27.     Indeed, Planet Home promises in its privacy policy that it "recognize[s] your right to confidentiality and value your trust very seriously. [Planet Home] strive[s] to protect the privacy of [its] clients' personal information and their customers' data." Planet Home further insists that "[b]y publishing this Privacy Statement [], [it] want[s] you to know that [it] appl[ies] long-standing commitment to safeguarding privacy to all of [its] online services and activities."[3]

28.     Planet Home further claims that it utilizes a variety of methods to ensure the safety of its clients' PII:

> While we use SSL encryption to protect sensitive information online, we also strive to protect user-information off-line. All of our Users' information, not just the sensitive information mentioned above, is restricted in our offices. Only employees who need the information to perform a specific job are granted access to the information. Furthermore, all employees are kept up-to-date on our security and privacy practices. Any time new policies are added, our employees are notified and/or reminded about the importance we place on privacy, and what they can do to ensure that our Clients' and their customers' information is protected. Finally, the servers on which we store our Clients' data are kept in a secure environment, with around the clock security.

29.     According to the Breach Notice, Planet Home claims that "on November 15, 2023," a cybercriminal known as LockBit, utilized a cybersecurity software vulnerability "in connection with one of its recent global ransomware campaigns" to access and pilfer Planet Home's clients' most sensitive and personal information, admitting that "the threat actor accessed" its clients ' loan information folders. Ex. A.

30.     In other words, the Data Breach investigation revealed Defendant's cyber and data

---

[3] Planet Home, Privacy Policy, https://planethomelending.com/privacy-policy/ (last visited January 31, 2024).

security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its clients' highly private information.

31.    Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's PII for theft and sale on the dark web.

32.    As admitted by Defendant itself, the notorious LockBit ransomware gang claimed responsibility for the cyberattack. Ex. A. LockBit is one of the most active ransomware actors, having breached over 1,000 companies worldwide[4] on a "global ransomware campaign". Ex. A. Planet Home  knew or should have known of the tactics that groups like LockBit employ.



---

[4] LockBit Hackers, BloomBerg, https://www.bloomberg.com/news/articles/2023-02-02/lockbit-hackers-behind-ion-breach-also-hit-royal-mail-hospital (last visited June 13, 2023).



33.    With the PII secured and stolen by Lockbit, the hackers then purportedly issued a ransom demand to Defendant. However, Defendant have provided no public information on the ransom demand but admits that it has "not paid and do not anticipate paying, any ransom amount to the threat actor." Ex. A.

34.    On information or belief, Lockbit is anticipated to release all stolen information onto the dark web for access, sale, and download following the deadline of the ransom demand to

Defendant.

35.     Indeed, Lockbit has not only stated that it is going to release all stolen information onto the dark web for sale, but that Defendant's cybersecurity system was particularly abysmal, commenting "the company doesn't care about its customers. It ignored their security!"

36.     Shockingly, Planet Home's cybersecurity systems and its supervision of its cybersecurity employees and agents are so abysmal that shortly before this Data Breach August 31, 2023, a *different* cybercriminal actor, Cl0p ransomware, stole 212 GB of data through a *different* cybersecurity vulnerability:



37.     This tactic of exfiltrating the PII for a ransom demand before placing PII onto a data leak page if the ransom demand is not met is something Lockbit and Cl0p, two of the most successful and lucrative ransomware gangs in the world, is well known for.[5] Defendants knew or should have known of the tactics that groups like Lockbit and Cl0p employ.

---

[5]          Ransomware                spotlight:            Clop,            Trendmicro, https://www.trendmicro.com/vinfo/us/security/news/ransomware-spotlight/ransomware-spotlight-clop (last visited October 17, 2023).

38.     Despite having knowledge that at least one ransomware gang had accessed and stolen its clients' most sensitive and valuable information, Defendant did not begin notifying Class Members about the Data Breach until January 24, 2024–over two months after the Data Breach first occurred.

39.     Despite its duties to safeguard PII, Defendant, a self-proclaimed leader in its industry, did not in fact follow industry standard practices in securing clients' PII, as evidenced by the Data Breach.

40.     In response to the Data Breach, Planet Home admits that, despite the promises it makes to clients through its privacy policy, Planet Home's cybersecurity are so insufficient that cybercriminals were able to "bypass these protections". Ex. A.

41.     Defendant further contends that it is or will "implement[] additional technical safeguards." Ex. A. Although Defendant fails to expand on what these "additional technical safeguards" are, such actions should have been in place before the Data Breach.

42.     Through its Breach Notice, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to be "vigilant against incidents of identity theft and fraud by reviewing your account statements, monitoring free credit reports you are entitled to receive, and immediately reporting any suspicious activity or incidents of suspected identity theft or fraud[.]" Ex. A

43.     Defendant further recognized their duty to implement reasonable cybersecurity safeguards or policies to protect clients' PII, promising that, despite the Data Breach demonstrating otherwise, Defendant "take[s] the security of information in our care seriously." Ex. A.

44.     On information and belief, Planet Home has offered several months of complimentary credit monitoring services to victims, which does not adequately address the

lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers.

45.     Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

46.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

47.     On information and belief, Planet Home failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its clients' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice.***

48.     It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

49.     In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[6]

50.     In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records,

---

[6] Data breaches break record in 2021, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed September 4, 2023).

March 2020), and Advanced Info Service (8.3 billion records, May 2020), Planet Home knew or should have known that its electronic records would be targeted by cybercriminals.

51.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

52.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

53.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

54.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[7]

55.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news

---

[7]   High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations, FBI, available at https://www.ic3.gov/Media/Y2019/PSA191002 (last accessed September 4, 2023).

for companies as revenge against those who refuse to pay."[8]

56.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[9]

57.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

58.    In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of thousands of its current and former clients in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

59.    Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

---

[8]    Ransomware mentioned in 1,000+ SEC filings over the past year, ZDNet, https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed September 4, 2023).

[9] Ransomware Guide, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last accessed September 4, 2023).

60.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its clients' Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff's Experience and Injuries***

61.     Plaintiff is a current client of Defendant and received a Data Breach notice on or around January 31, 2024.

62.     As a condition of receiving Defendant's services, Plaintiff provided it with his PII, including but not limited to his name, Social Security number, and financial information. Planet Home used that PII to facilitate its services to Plaintiff and required Plaintiff to provide that PII to obtain its mortgage services.

63.     Plaintiff provided his PII to Planet Home and trusted that the company would use reasonable measures to protect it according to state and federal law.

64.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for over two months.

65.     As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's PII for theft by numerous cybercriminals and sale on the dark web.

66.     Plaintiff suffered actual injury from the exposure of his PII —which violates his rights to privacy.

67.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

68.     As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach,

reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through the three main credit bureaus, and monitoring his credit information.

69.      Plaintiff has already spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

70.      Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's delay in informing Plaintiff and Class Members about the Data Breach.

71.      Indeed, following the Data Breach, Plaintiff has experienced an enormous increase in spam calls and emails, suggesting that his PII is now in the hands of cybercriminals.

72.      Once an individual's PII is for sale and access on the dark web, as Plaintiff's PII is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[10] On information and belief, Plaintiff's phone number and email address are compromised as a result of the Data Breach.

73.      Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

---

[10] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited January 9, 2024).

*Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft*

74.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

75.    As a result of Planet Home's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

    a.    The loss of the opportunity to control how their PII is used;

    b.    The diminution in value of their PII;

    c.    The compromise and continuing publication of their PII;

    d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.    Delay in receipt of tax refund monies;

    g.    Unauthorized use of stolen PII; and

    h.    The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

76.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to

$1,000.00 depending on the type of information obtained.

77.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

78.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

79.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

80.    One such example of criminals using PII for profit is the development of "Fullz" packages.

81.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

82.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam

telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

83.    Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

84.    Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

85.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

86.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

    a.   protect the personal customer information that they keep;

    b.   properly dispose of personal information that is no longer needed;

    c.   encrypt information stored on computer networks;

    d.   understand their network's vulnerabilities; and

    e.   implement policies to correct security problems.

87.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

88.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

89.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer, or in this instance, client data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

90.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

91.    Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

92.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

93.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

94.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

95.     Plaintiff is suing on behalf of himself and the proposed Class ("Class"), defined as follows:

> **All individuals residing in the United States whose PII was compromised in Defendant's Data Breach, including all those who received notice of the breach.**

96.     Excluded from the Class is Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate

family.

97.     Plaintiff reserves the right to amend the class definition.

98.     Plaintiff and members of the Class satisfy the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23:

        a.     **Numerosity**. Plaintiff's claim is representative of the proposed Class, consisting of at least 199,873 clients, far too many to join in a single action;

        b.     **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

        c.     **Typicality**. Plaintiff's claim is typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

        d.     **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's interests. His interest does not conflict with Class members' interests, and Plaintiff has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

        e.     **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

            i.     Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

           ii.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.    Whether Defendant was negligent in maintaining, protecting, and securing PII;

iv.    Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's PII;

v.    Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.    Whether Defendant's Breach Notice was reasonable;

vii.    Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii.    What the proper damages measure is; and

ix.    Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

f.    **<u>Appropriateness</u>**. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

g.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

99.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

100.    Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only,

and/or not disclose their PII to unauthorized third parties.

101.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

102.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

103.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff's and Class Members' PII.

104.    Defendant owed—to Plaintiff and Class Members—at least the following duties to:

    a.  exercise reasonable care in handling and using the PII in its care and custody;

    b.  implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

    c.  promptly detect attempts at unauthorized access;

    d.  notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

105.    Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the

harm caused by the Data Breach.

106.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

107.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

108.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

109.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

110.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff's and Class Members' and the importance of exercising reasonable care in handling it.

111.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

112.    Defendant breached these duties as evidenced by the Data Breach.

113.    Defendant acted with wanton and reckless disregard for the security and

confidentiality of Plaintiff's and Class Members' PII by:

      a.   disclosing and providing access to this information to third parties and

      b.   failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

114.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury.

115.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

116.    Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

117.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

118.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing,

imminent, immediate, and which they continue to face.

## SECOND CLAIM FOR RELIEF
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

119.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

120.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

121.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive PII.

122.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

123.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

124.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

125.    But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

126.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

127.    Defendant's violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

128.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*)

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

129.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

130.    Plaintiff and the Class delivered their PII to Defendant as part of the process of obtaining services provided by Defendant.

131.    Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

132.    In providing their PII, Plaintiff and Class Members entered into an implied contract with Defendant, whereby Defendant, in receiving such data, became obligated to reasonably

safeguard Plaintiff's and the other Class Members' PII.

133.    In delivering their PII to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

134.    Plaintiff and the Class Members would not have entrusted their PII to Defendant in the absence of such an implied contract.

135.    Defendant accepted possession of Plaintiff's and Class Members' PII.

136.    Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure clients' PII, Plaintiff and members of the Class would not have provided their PII to Defendant.

137.    Defendant recognized that clients' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

138.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

139.    Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard their data.

140.    Defendant breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their PII.

141.    As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity;

(d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their PII; and (h) the continued and substantial risk to Plaintiff's and Class Members' PII, which remains in the Defendant's possession with inadequate measures to protect Plaintiff's and Class Members' PII.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Plaintiff and the Class)**

142.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

143.    This claim is plead in the alternative to the breach of implied contractual duty claim.

144.    Plaintiff and members of the Class conferred a benefit upon Defendant in the form of payment. Defendant also benefited from the receipt of Plaintiff's and the Class's PII, as this was used to facilitate their mortgage services.

145.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class.

146.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class's services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII had they known Defendant would not adequately protect their PII.

147.    Defendant should be compelled to disgorge into a common fund to benefit Plaintiff and members of the Class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged here.

## FIFTH CLAIM FOR RELIEF
### Invasion of Privacy
### (On Behalf of the Plaintiff and the Class)

148.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

149.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

150.    Defendant owed a duty to its clients, including Plaintiff and the Class, to keep this information confidential.

151.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

152.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant to obtain mortgage services, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

153.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

154.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

155.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

156.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

157.    As a proximate result of Defendant's acts and omissions, the PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

158.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their PII are still maintained by Defendant with its inadequate cybersecurity system and policies.

159.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

160.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

### SIXTH CLAIM FOR RELIEF
### Violations of Connecticut Unfair Trade Practices,
### CT. GEN. STAT. § 42-110
### (On behalf of Plaintiff and the Class)

161.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

162.    The Connecticut Unfair Trade Practices provides that:

(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

163.    In the conduct of their business, trade, and commerce, Defendant collected and stored highly personal and private information, including PII belonging to Plaintiff and the Class.

164.    Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's PII secure and prevented the loss or misuse of that PII.

165.    Defendant failed to disclose to Plaintiff and the Class that their PII was not secure. At no time were Plaintiff and the Class on notice that their PII was not secure, which Defendant had a duty to disclose.

166.    Had Defendant complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the data breach.

167.    Defendant Webster are a "person" as defined by CT. Gen. Stat § 42-110a (3).

168.    Defendant are engaged in "trade" or "commerce" as those terms are defined by CT. Gen. Stat § 42-110a (4).

169.    At the time of filing this Complaint, Plaintiff is sending notice to the Attorney General and Commissioner of Consumer Protection pursuant to by CT. Gen. Stat § 42-110g (c). Plaintiff will provide a file-stamped copy of the Complaint to the Attorney General and Commissioner of Consumer Protection.

170.    As alleged herein this Complaint, Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and services to customers in violation of the Connecticut Unfair Trade Practices Act, including but not limited to the following:

   a.   failing to adequately secure customers' PII;

   b.   failing to maintain adequate computer systems and data security practices to safeguard customers' PII;

   c.   failing to disclose the material information, known at the time of the transaction – collection and retention of customer PII– that their cybersecurity vendors would

not adequately protect and safeguard customers' PII;

d.  inducing customers to use Defendant's services by failing to disclose, and misrepresenting the material fact that Defendant's data security practices were inadequate to safeguard their customers' PII from theft.

171.    Defendant's conduct was unlawful, in that it violated the policy set forth in Connecticut's Unfair Trade Practices, requiring the safeguard of PII, the FTCA, as identified above, and Defendant's common law duty to safeguard PII.

172.    By engaging in the conduct delineated above, Defendant violated the Connecticut Unfair Trade Practices Act by, among other things:

a.  omitting material facts regarding the goods and services sold;

b.  omitting material facts regarding the security of the transactions between Defendant and customers;

c.  omitting material facts regarding the security of the transactions between Defendant and customers who furnished or entrusted their PII;

d.  misrepresenting material facts in the furnishing or sale of products, goods or services to customers;

e.  engaging in conduct that is likely to mislead customers acting reasonably under the circumstances;

f.  engaging in conduct which creates a likelihood of confusion or of misunderstanding;

g.  engaging in conduct with the intent to induce customers to use Defendant's service;

h.  unfair practices that caused or were likely to cause substantial injury to customers which is not reasonably avoidable by customers themselves and not outweighed by countervailing benefits to customers; and/or

i.  other unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices to be shown at trial.

173.  Defendant systemically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and the Class.

174.  Defendant's actions in engaging in the conduct delineated above were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and the Class.

175.  As a direct result of Defendant's violation of the Connecticut Consumer Protection Act, Plaintiff and the Class have suffered actual damages, including but not limited to: (i) the loss of the opportunity how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect that PII; and (viii) present and future costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of

Plaintiff and the Class.

176.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices of Defendant alleged herein, Plaintiff and the Class seek relief under CT. Gen. Stat § 42-110, including, but not limited to, the greater of actual damages, statutory damages, or treble damages for bad faith conduct, injunctive relief, attorneys' fees and costs, as allowable by law.

### PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.   Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.   Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demands that this matter be tried before a jury.


Dated: February 5, 2024                By:  */s/ Oren Faircloth*
                                                      Oren Faircloth, CT Bar #438105
                                                      ofaircloth@sirillp.com
                                                      SIRI & GLIMSTAD LLP
                                                      745 Fifth Ave, Suite 500
                                                      New York, New York 10151
                                                      Telephone: (212) 532-1091

                                                      Raina Borrelli (*pro hac vice* anticipated)
                                                      raina@turkestrauss.com
                                                      TURKE & STRAUSS LLP
                                                      613 Williamson St., Suite 201
                                                      Madison, Wisconsin 53703-3515
                                                      Telephone: (608) 237-1775
                                                      Facsimile: (608) 509 4423


                                                      *Attorneys for Plaintiff and Proposed Class*